## Staake, Appellant, *v.* Pennsylvania Railroad Company.

*Contract—Sale—Iron ore—Delivery—Separation from bulk.*

1. Where an owner of 6,000 tons of iron ore stored on a railroad dock gives an order to the railroad company to deliver 3,500 tons to a furnace company, and the latter company does not take possession of the 3,500 tons, and does not separate it from the other ore, and the seller hearing of the financial embarrassment of the furnace company gives orders to the railroad company to deliver the iron ore to other parties, and these orders are honored, the furnace company cannot maintain an action of trover and conversion against the railroad company, inasmuch as the furnace company never had in it any title to the ore.

2. If, in such a case, it appeared that the order was given to the railroad company merely as an accommodation to the furnace company without any consideration to the owner of the ore, such order could be revoked at any time before the furnace company took possession of the ore.

Argued March 24, 1911. Appeal, No. 30, Jan. T., 1911, by plaintiff, from judgment of C. P. No. 3, Phila. Co., June T., 1908, No. 4,688, for defendant non obstante veredicto in case of William H. Staake, trustee of the estate of Saxton Furnace Company, in Bankruptcy, v. The Pennsylvania Railroad Company. Before BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Assumpsit changed by agreement of counsel to trover and conversion. Before McMICHAEL, P. J.

From the record it appeared that the plaintiff claimed damages for the conversion of 3,500 tons of Hiawatha iron ore which had been stored on the docks of the defendant at Erie, Pennsylvania.

At the trial it appeared that on August 8, 1903, Drake, Bartow & Co. had on the docks of the defendant company at Erie, Pa., about 6,000 tons of Hiawatha iron ore, and on that day they sent to the Saxton Furnace Company a letter and an order for 3,500 tons as follows:

"CLEVELAND, August 8th, 1903.
"The Saxton Furnace Co., Phila., Pa.

"Gentlemen:—We hand you herewith order on P. & E. Dock Co. Erie, Pa. for 3500 tons of Hiawatha ore.

"Kindly give us credit for this amount, and oblige,
"Yours truly,
"Erie.                    DRAKE, BARTOW & Co."

"CLEVELAND, August 8th, 1903.
"Davis Rees, Agent, Erie, Pa.

"Please transfer for our account, as below from amount now on dock, in our name 3500 tons Hiawatha Ore to Saxton Furnace Co., Saxton, Pa.
"Yours truly,
"DRAKE, BARTOW & Co.,
"BY L."

The Saxton Furnace Company took no steps to separate the 3,500 tons from the other ore, but pledged the order with L. & R. Wister Co. for advances. The amount of ore was depleted from time to time by shipments on various orders until on February 29, 1904, there was only 847 tons on hand. Subsequently the Saxton Furnace Company was adjudicated a bankrupt and William H. Staake was appointed trustee in bankruptcy. Subsequently he made demand on the railroad company for the iron ore, which demand was refused. There was evidence that the order for 3,500 tons was merely for the accommodation of the furnace company, and was without consideration.

At the trial the jury returned a verdict for plaintiff for $12,967.50. Subsequently the court entered judgment for defendant n. o. v., FERGUSON, J., filing the following opinion:

I concur with the trial judge in his view that the order of August 8, 1902, which is the basis of the action, was given for the accommodation of the Saxton Furnace Company, and as between it and Drake, Bartow & Co., it was without consideration, and up to the time of delivery, it was subject to revocation. There is nothing in the evidence which would justify a finding contrary to this view on the facts, and for that reason, judgment should be entered for the defendant non obstante veredicto. I am of opinion, however, that for another reason such a judgment may be sustained.

The action is in trover and conversion, and in such case the plaintiff must show both property in himself and the right to possession at the time of the conversion or commencement of the action: Farmers' Bank v. McKee, 2 Pa. 318; Pennsylvania Railroad Co. v. Hughes, 39 Pa. 521; Duffield v. Miller, 92 Pa. 286. The evidence clearly shows that at the time the order was delivered, Drake, Bartow & Co. had 5,912 tons of ore upon the docks of the Pennsylvania Railroad Company, at Erie. The order of August 8 was for 3,500 tons. In my view, it is of little importance whether or not the order was presented to the railroad company and filed with it in accordance with its rule. There was no attempt made by the Saxton Furnace Company, or by L. & R. Wister & Co., to separate the 3,500 tons represented by the order from the bulk of the ore upon the dock, and for this reason, under the authorities, the title never passed. Wister & Co. accepted the order as a basis of credit, and so long as they left the ore in the mass upon the dock, their security was in jeopardy and liable at any time to be destroyed by shipments. We are not concerned, however, with the position of Wister & Co.; they appear to have been satisfied, and to have surrendered the order to the Saxton Company, or its representative. The rule which would defeat Wister & Co. must necessarily defeat the Saxton Company. The law on the subject is thus stated by ROGERS, J., in Hutchinson v. Hunter, 7 Pa. 140 (page 141): "The fundamental

rule . . . . is, that the parties must be agreed as to the specific goods on which the contract is to attach before there can be a bargain and sale. This, as Mr. Blackburn, in his treatise on the Contract of Sale, page 120, very correctly observes, is founded in the very nature of things. Till the parties are agreed as to the specific identical goods, the contract can be no more than a contract to supply goods answering a particular description, and since the vendor would fulfill his part of the contract by furnishing any parcel of goods answering that description, and the purchaser could not object to them if they did answer that description, it is clear that there can be no intention to transfer the property in any particular lot of goods more than another till it is ascertained which are the very goods sold (page 142). It makes no difference, although the goods are so far ascertained, that the parties have agreed that they shall be taken from a specified larger stock. In such a case, the reason still applies; the parties did not intend to transfer the property in one portion of the stock more than another, and the law which only gives effect to their intention does not transfer the property in any individual portion (page 145). The rule, I take it, is now too firmly settled to be shaken, that the goods sold must be ascertained, designated, and separated from the stock or quantity with which they are mixed before the property can pass. Until this is done, it remains the property of the vendor, and if destroyed by fire or otherwise, it is the loss of the vendor, and not the loss of the vendee." See also Pennsylvania Railroad Company v. Hughes, 39 Pa. 521. In Haldeman v. Duncan, 51 Pa. 66, Duncan bought of Haldeman 300 barrels of oil and paid the purchase money. The oil was pointed out to Duncan as being included in a larger quantity of oil at the place of delivery, and request made to select his 300 barrels. Nothing was done by way of separating or selecting the amount purchased. It was held there was no delivery, the sale was not completed and no title passed to Duncan. A flood having swept away all of Haldeman's oil at the

place of delivery, Duncan afterwards demanded delivery
of the 300 barrels of oil, which was refused by Haldeman,
held that Duncan was entitled to recover the price paid
by him. In that case READ, J., repeated the rule as stated
by Mr. Justice ROGERS in Hutchinson v. Hunter, 7 Pa. 140.

It is contended, however, that the ancient rule upon the
subject has been changed by the more recent decisions in
Hutchison v. Commonwealth, 82 Pa. 472, and Brown-
field v. Johnson, 128 Pa. 254. In the former case, the
Supreme Court recognized an exception to the rule stated
because of the necessities of a certain particular trade and
the customs of that trade. That case was one in which the
distinction is drawn between a sale by a vendor of a portion
of a quantity of goods not separated from the mass and
all belonging to the vendor, and the sale of oil belonging
to the vendor and represented by receipts, the oil being
mixed with that of other parties in a pipe line. It will be
observed by the opinion of PAXSON, J., that he states the
rule which runs through the cases above quoted thus (page
480): "It is a fundamental principle pervading every-
where the doctrine of sales, that if goods be sold by number,
weight or measure, the sale is incomplete, and the risk
continues with the seller until the specific property be sep-
arated and identified. This principle runs through all the
cases upon this subject and is too firmly established to be
shaken. Nor are we disposed to question its soundness."
The learned justice then proceeds to call attention to the
peculiar facts of the case before him (page 482): "The oil
which is the subject of this contention was not mixed with
any other oil of the prosecutor. It required no separation
from any other portion of his property. It was not even in
his actual custody or possession. He had the construc-
tive possession by virtue of his accepted orders; when,
therefore, he delivered the orders to the defendants, there
was nothing remaining for him to do to complete the
transaction. He had done all in his power to render the
delivery complete. The oil was in the pipes of the Pipe
Line Company. For the sake of convenience, it was

poured in and mixed with the oil of other producers, and by the usage of trade, each one was entitled to draw out, not the identical oil put in, but oil which is its precise equivalent. In the consideration of the question involved in this case, we cannot close our eyes to the total revolution in the manner of doing business which has been brought about by the discovery of petroleum in this state.''

It, therefore, seems to me that the fact that the oil in the pipe line, and represented by the orders, was mixed with the oil of other producers made it impossible, in the nature of things, that there could be any separation in order to complete the title. Aside from this, the court seems to have laid considerable stress upon the fact that by the usage of the trade the transfer of orders was considered as a delivery of oil. No such usage has been shown to exist in the case at bar.

The other case which is cited as showing a departure from the rule is Brownfield v. Johnson, 128 Pa. 254. In my opinion this case cannot be relied upon for that purpose, for it seems to have been decided largely upon principles affecting the relations of agent and principal.

The action in this case cannot lie unless the title to the ore was in the plaintiff. Under the authorities quoted, by reason of the fact that the order of August 8 was for a less number of tons than the amount of ore on the dock and in the possession of the defendant company, but belonging to Drake, Bartow & Co., and that no separation was ever had, there never was a delivery, actual or constructive, and the title could not pass. Neither in my judgment was there an automatic shifting of title by the reduction of the quantity of ore to the amount represented by the order, or to a less amount, unless, at the time the contract was made, there was a transfer of title. I fail to see how the subsequent acts of the owner in reducing the mass to a certain quantity could effect such a transfer. As there was no title in the plaintiff, it was well within the power of Drake, Bartow & Co., when they

learned that the Saxton Furnace Company was in failing circumstances, to stop delivery of the ore in the possession of the defendant, and for the consequences of this stoppage there can be no recovery against the defendant.

*D. Stuart Robinson* and *Arthur G. Dickson,* for appellant.—It is submitted that a brief review of the decisions of this court will show that the court below is in error: Winslow, Lanier & Co. v. Leonard, 24 Pa. 14; Hutchinson v. Com., 82 Pa. 472; Gonser v. Smith, 115 Pa. 452; Brownfield v. Johnson, 128 Pa. 254

*C. J. Hepburn* and *John Hampton Barnes,* for appellee.—The order of August 8, 1903, was given by Drake, Bartow & Co. solely for the accommodation of the Saxton Furnace Company, and for hypothecation by that company for its own benefit. Upon the determination of the pledgee's rights therein the order lost all potency, and no right or title to it or the ores referred to in it, did or could then revert to the Saxton Furnace Company: Moore v. Baird, 30 Pa. 138; Bower v. Hastings, 36 Pa. 285; Gunnis v. Weigley, 114 Pa. 191; Peale v. Addicks, 174 Pa. 543; Tasker's Estate, 182 Pa. 122; Hood v. Robbins, 98 Ala. 484 (13 So. Repr. 574); Coghlin v. May, 17 California, 515; Moore v. Maddock, 33 Mo. 575; Messmore v. Meyer, 56 N. J. Law, 31 (27 Atl. Repr. 938); Second Nat. Bank v. Howe, 40 Minn. 390 (42 N. W. Repr. 200); Tufts v. Shepherd, 49 Maine, 312; Berkeley v. Tinsley, 88 Va. 1001 (14 S. E. Repr. 842).

It is settled beyond all controversy that, in order to maintain an action in trover and conversion, the plaintiff must show both property in himself and the right of possession at the time of the conversion, or of the commencement of the action: Farmers' Bank v. McKee, 2 Pa. 318, Penna. R. R. Co. v. Hughes, 39 Pa. 521; Wenger v. Barnhart, 55 Pa. 300; Duffield v. Miller, 92 Pa. 286.

The goods sold must be ascertained, designated and separated from the stock or quantity with which they

are mixed before the property can pass: Hutchinson v. Hunter, 7 Pa. 140; Golder v. Ogden, 15 Pa. 528; Penna. R. R. Co. v. Hughes, 39 Pa. 521; Haldeman v. Duncan, 51 Pa. 66; Pringle v. Pringle, 59 Pa. 281; Brock v. McCaffrey, 3 Pa. Superior Ct. 431; Conard v. Penna. R. R. Co., 214 Pa. 98.

This rule has been recently approved and applied in other states: Pabst Brewing Co. v. Commonwealth, 32 Ky. Law Repr. 1010 (107 S. W. Repr. 728); Lighthouse v. Third Nat. Bank, 162 N. Y. 336 (56 N. E. Repr. 738); Carpenter v. Glass, 67 Ark. 135 (53 S. W. Repr. 678); Lawry v. Ellis, 85 Maine, 500 (27 Atl. Repr. 518); Wood v. Roach, 52 Ill. App. 388; New England Dressed Meat & Wool Co. v. Standard Worsted Co., 165 Mass. 328 (43 N. E. Repr. 112).

PER CURIAM, April 24, 1911:

This judgment non obstante veredicto is affirmed for the reasons given by Judge FERGUSON in his opinion concurring in its entry.